UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK S. HALL, | No. 2:05-cv-02332-MCE-GGH |
| Plaintiff, | |
| v. | AMENDED SECOND FINAL PRETRIAL ORDER |
| COUNTY OF SACRAMENTO, et al., | TRIAL DATE: **May 3, 2010** |
| | TIME: **9:00 a.m.** |
| Defendants. | |

Pursuant to Court Order, a Final Pretrial Conference was held on March 18, 2010. Gerald Filice appeared as counsel for Plaintiff. David A. Melton and Colleen R. Howard appeared as counsel for Defendants. After hearing, the Court makes the following findings and orders:

I. JURISDICTION/VENUE

Jurisdiction is predicated upon 28 U.S.C. sections 1331 and 1343. Jurisdiction and venue are not contested.

///

///

1  II. JURY

Both parties timely demanded a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

III. UNDISPUTED FACTUAL ISSUES

Plaintiff, himself a Registered Nurse Practitioner, was booked into the Sacramento County Main Jail on November 18, 2003, after being arrested for driving under the influence. He tested .18 on the breathalyzer test. Prior to his arrest, Plaintiff had been drinking vodka alone in his apartment. Plaintiff was diagnosed with bipolar depression and hypomania in June 2003 and was prescribed Depakote. Plaintiff did not take his Depakote as prescribed, but instead he took it as needed to control hypomanic episodes because he could not afford to refill his prescription and had to conserve the medication.

When Plaintiff was first booked into the Main Jail, he was evaluated by the jail nurse who checked off that Plaintiff was a Jail Psychiatric Services (JPS) referral because Plaintiff mentioned that he was prescribed Depakote.

After his initial evaluation, Plaintiff then went to the pat down area where he got into an altercation with two sheriff's deputies. During that altercation, Plaintiff hit his forehead on the ground. After that, Plaintiff went to get photographed. Plaintiff then saw another jail nurse about his forehead.

///
///

Plaintiff was then put in the sobering cell. After several hours, sheriff's deputies found Plaintiff in a fetal position having what appeared to be a seizure. The jail nurse responded with smelling salts, but concluded that Plaintiff did not have a seizure and had faked a seizure. At that time, no further treatment was provided to Plaintiff, and he did not receive his medication, nor an examination by a medical doctor.

After an altercation in the sobering cell between Plaintiff and Defendant Deputy Burnette, Plaintiff was taken to Sutter General Hospital for lacerations to his head, one of which was 4 inches long. Defendant Deputy Burnette and another sheriff's deputy were taken to Kaiser Hospital for treatment.

IV. <u>DISPUTED FACTUAL ISSUES</u>

The remaining claim(s) for trial is/are:

**Defendants' Contentions:**

Defendants contend that during the pat-down procedure, Plaintiff was raising his hands towards the sheriff's deputy's face and using profanities. Because Plaintiff was acting in a threatening manner, the sheriff's deputy placed Plaintiff in a control hold.

Later when Plaintiff was placed in the sobering cell, he was acting belligerent, using profanities, and was kicking and pounding at the door. This was the first time Plaintiff request his medication.

///

///

After Plaintiff's fake seizure, he started kicking and pounding at the door again. Later, Defendant Deputy Burnette entered the sobering cell to retrieve another inmate. When Defendant Deputy Burnette entered the sobering cell, he instructed Plaintiff to stay back and that he was attending to another inmate. Plaintiff quickly approached Defendant Deputy Burnette and raised his hands towards Defendant Deputy Burnette in a threatening manner. Defendant Deputy Burnette instructed Plaintiff to lower his hands and step back. Plaintiff then tried to punch Defendant Deputy Burnette in the face. Defendant Deputy Burnette blocked the punch, and took Plaintiff down to the ground. Defendant Deputy Burnette with the help of another sheriff's deputy attempted to gain control of Plaintiff. Plaintiff struck Defendant Deputy Burnette several times in the head, and Defendant Deputy Burnette then struck Plaintiff four to six times in the head and face. Finally, the sheriff's deputies managed to gain control of Plaintiff. After Plaintiff was controlled, he was placed in a prostraint chair with a spit mask.

**Plaintiff's Contentions:**

When Plaintiff was evaluated by the jail nurse who checked off that Plaintiff was a Jail Psychiatric Services (JPS) referral because Plaintiff mentioned that he was prescribed Depakote and suffered from hypomania.

///

///

4

Plaintiff then went to the pat down area where there was some physical conflict with two Sheriff's deputies. Plaintiff was forced down on the floor by a deputy and hit his forehead, causing a laceration.

Plaintiff was then put in the sobering cell. For several hours, Plaintiff demanded of the deputies that they give him his medication. He demanded to see a lawyer. As he detoxed from alcohol, and the manic phase of his condition increased, Plaintiff was increasingly agitated, yelling and swearing at the deputies and pounding on the door when they ignored him or refused his requests for his Depakote medication. Deputy Burnette (and the other deputies in the intake loop) personally witnessed Plaintiff's increasingly agitated and violent behavior.

Later, Defendant Deputy Burnette approached the sobering cell. While still outside the cell, with the door closed, Burnette and Plaintiff had a verbal altercation. Plaintiff's demeanor was combative. Plaintiff was standing about 1 foot inside the doorway. When Defendant Deputy Burnette entered the sobering cell, a physical altercation immediately ensued, and Plaintiff was subjected to a leg sweep by Burnette, knocking him to the floor. On top of Plaintiff, Burnette punched Plaintiff repeatedly in the face. Plaintiff managed to get off a few punches himself. With the intervention of several additional deputies, Plaintiff was put in restraints.

///

After Plaintiff was controlled, he was placed in a prostraint chair with a spit mask, while blood ran down his face – he was bleeding profusely.

Defendants Sheriff's Department and Sacramento County appear to have established the following practices and/or policies which are relevant to the medical and psychiatric conditions of Plaintiff:

- First, a JPS referral such as received by Plaintiff from the intake nurse did not result in a prompt examination and evaluation of Plaintiff by trained psychiatric personnel – the intake nurses had little or no training in psychiatric matters and routinely deferred all such questions to the Jail psychiatric personnel. Moreover, the type of JPS referral given Plaintiff was documented in the form of a piece of paper that was placed into an out box by the intake nurse to be retrieved the next day by JPS personnel. There was no policy or practice of calling the JPS personnel at the Jail to advise them of a JPS referral, except where the arrestee/patient stated to the intake nurse that he or she was suicidal.

- Second, nurses in the intake area relied on Sheriff's Deputies to watch the arrestee/patients in the sobering cell and inform them of any matters that might affect the medical condition of the arrestee/patients.

///

///

///

Although the booking loop had been designed (by Plaintiff's expert, Tim Twomey, who then was an officer in the Sheriff's Department) with a one-way window between the nurse's station and the sobering cell, so that the nurses could watch the arrestee/patients in order to comply with the American Medical Association's mandate to constantly monitor arrestee/patients who were detoxing, the window was installed backwards, preventing the nurses from seeing into the sobering cell. The response from Defendants Sheriff's Department and Sacramento County? They covered up the window with cardboard rather than fixing it, to prevent the arrestee/patients from seeing into the nurses' station! Although the Sheriff's Deputies have now become the initial guardians of the health of arrestee/patients held in the sobering cell, they are not trained to do so, and instead take the position that the health of the patients is the duty of the nurses. The nurses, in turn, pass the buck regarding JPS referrals to the JPS staff. The result is that no one in the intake loop takes responsibility for monitoring the condition of arrestee/patients who are not suicidal.

- Third, the Jail has a policy or practice that nurses in the intake loop do not supply arrestee/patients with medication while in the sobering cell, except heart medication and smelling salts.

Plaintiff's expert, Timothy Twomey, will testify that it was a violation of proper police practices for Burnette to open the cell door, since he was well aware that a fight would ensue.

Burnette was in total control of Plaintiff while the door was closed. The proper procedure would have been to assemble a CERT team to extract Plaintiff from the cell, without injury to any person.

The medical and psychiatric policies and practices at the Jail, such as the refusal to provide him prompt medical and psychiatric treatment, directly caused Plaintiff to spin out of control emotionally and led to the altercations discussed above.

All issues of fact remaining in dispute are subject to proof at the time of trial.

V. <u>WITNESSES</u>

Plaintiff anticipates calling the witnesses listed on Attachment "A".

Defendants anticipate calling the witnesses listed on Attachment "B".

Each party may call a witness designated by the other.

A. No other witnesses will be permitted to testify unless:

(1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the Final Pretrial Conference, or

(2) The witness was discovered after the Final Pretrial Conference and the proffering party makes the showing required in "B" below.

///

B.  Upon the post-pretrial discovery of witnesses, the attorney shall promptly inform the Court and opposing parties of the existence of the unlisted witnesses so that the Court may consider at trial whether the witnesses shall be permitted to testify.  The evidence will not be permitted unless:

    (1)  The witnesses could not reasonably have been discovered prior to pretrial;

    (2)  The Court and opposing counsel were promptly notified upon discovery of the witnesses;

    (3)  If time permitted, counsel proffered the witnesses for deposition;

    (4)  If time did not permit, a reasonable summary of the witnesses' testimony was provided by opposing counsel.

VI. <u>EXHIBITS - SCHEDULES AND SUMMARIES</u>

At present, Plaintiff contemplates by way of exhibits those listed on Attachment "C".

At present, Defendants contemplate by way of exhibits those listed on Attachment "D".

**Plaintiff's exhibits shall be listed numerically. Defendants' exhibits shall be listed alphabetically**.  The parties shall use the standard exhibit stickers provided by the Court Clerk's Office:  pink for Plaintiff and blue for Defendants.  After three letters, note the number of letters in parenthesis (i.e., "AAAA(4)" to reduce confusion during the trial.

///

All multi-page exhibits shall be stapled or otherwise fastened together and each page within the exhibit shall be numbered. All photographs shall be marked individually. The list of exhibits shall not include excerpts of depositions which may be used to impeach witnesses.

Each party may use an exhibit designated by the other. In the event that Plaintiff and Defendants offer the same exhibit during trial, that exhibit shall be referred to by the designation the exhibit is <u>first</u> <u>identified</u>. The Court cautions the parties to pay attention to this detail so that all concerned, including the jury, will not be confused by one exhibit being identified with both a number and a letter.

A. No other exhibits will be permitted to be introduced unless:

(1) The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Scheduling Conference, or

(2) The exhibit was discovered after the Pretrial Scheduling Conference and the proffering party makes the showing required in paragraph "B", below.

B. Upon the post-pretrial discovery of exhibits, the attorneys shall promptly inform the Court and opposing counsel of the existence of such exhibits so that the Court may consider at trial their admissibility. The exhibits will not be received unless the proffering party demonstrates:

(1)   The exhibits could not reasonably have been discovered prior to pretrial;

                    (2)   The Court and counsel were promptly informed of their existence;

                    (3)   Counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel.  If the exhibit(s) may not be copied, the proffering counsel must show that he has made the exhibit(s) reasonably available for inspection by opposing counsel.

     C.   As to each exhibit, each party is ordered to exchange a copy identical to the Court's copy, or other reproduction of the exhibit(s) in a three-ring binder(s) by **April 19, 2010.**  The attorney or representative for each party is directed to present the original and two (2) copies of the exhibit(s) and exhibit list to the Court Clerk's Office, no later than **3:00 p.m., April 19, 2010,** or at such earlier time as may be ordered by the Court.  **NO EXCEPTIONS.**

     D.   **The Court shall be presented with a copy of the exhibit(s) in a 3-ring binder(s) with a side tab identifying each exhibit by number or letter.  Each binder shall be no larger than three inches in width and have an identification label on the front and side panel.**

///
///
///
///

1    VII.   DISCOVERY DOCUMENTS

2        A.   Filing Depositions.  It is the duty of counsel to
3 ensure that any deposition which is to be used at trial has been
4 lodged with the Clerk of the Court.  In addition, two unmarked
5 copies of the transcripts must be delivered to the Court Clerk's
6 Office.  Counsel are cautioned that a failure to discharge this
7 duty may result in the Court precluding use of the deposition or
8 imposition of such other sanctions as the Court deems
9 appropriate.

10       B.   Use of Depositions.  The parties are ordered to file
11 with the Court and exchange between themselves by **April 19, 2010**
12 a statement designating portions of depositions intended to be
13 offered or read into evidence (except for portions to be used
14 only for impeachment or rebuttal).

15       C.   Interrogatories.  The parties are ordered to file with
16 the Court and exchange between themselves by **April 19, 2010** the
17 portions of Answers to Interrogatories which the respective
18 parties intend to offer or read into evidence at the trial
19 (except portions to be used only for impeachment or rebuttal).

20    VIII.  FURTHER DISCOVERY OR MOTIONS

21       Pursuant to the Court's Pretrial Scheduling Order, all
22 discovery and law and motion was to have been conducted so as to
23 be completed as of the date of the Final Pretrial Conference.
24 That Order is confirmed.
25 ///
26 ///

The parties are free to engage in informal agreements regarding discovery and law and motion matters. However, any such agreements will not be enforceable in this Court.

IX. AGREED STATEMENTS - JOINT STATEMENT OF CASE

It is mandatory the parties shall file a short, jointly-prepared statement concerning the nature of this case that will be read to the jury at the commencement of trial (**NO EXCEPTIONS**). The joint statement of the case shall include in plain concise language the claims of Plaintiff and claims of other parties, if any, and the corresponding defenses to the claims. The purpose of the joint statement of the case is to inform the jury at the outset, what the case is about. The statement must be filed with the Court by **April 19, 2010.**

X. PROPOSED JURY INSTRUCTIONS, VOIR DIRE, VERDICT FORM

A. Jury Instructions

Counsel are directed to meet and confer and to attempt to agree upon a joint set of jury instructions. Counsel shall use the Ninth Circuit Model Jury Instructions and any revisions. Alternate instruction or authority may only be used if a Ninth Circuit Model Jury Instruction is unavailable. The joint set of instructions must be filed by **April 19, 2010** and shall be identified as the "Jury Instructions Without Objection."

///
///
///
///

All instructions shall be, to the extent possible, concise, understandable, and free from argument. See Local Rule 163(c). Parties shall also note that any modifications of instructions from statutory authority, case law or from any form of pattern instructions must specifically state the modification by underlining additions and bracketing deletions.

B. Verdict Form

The parties must file a joint verdict form(s) concurrently with proposed jury instructions by **April 19, 2010**. If necessary, a special verdict or interrogatories shall be included for all factual disputes submitted to the jury that must be resolved before questions of law can be decided, and for any other issue on which specific responses are desired. See Local Rule 163(e).

C. Voir Dire

The parties shall submit proposed voir dire questions to the Court. The Court reserves the right to conduct all examination of prospective jurors. Notwithstanding this reservation, the Court will permit each side up to ten (10) minutes to conduct voir dire, if desired. The voir dire questions shall be filed with the Court by **April 19, 2010**.

///
///
///
///
///

1     D. <u>Submission of Documents to the Court</u>

    At the time of filing their respective proposed jury instructions, verdict form(s), and voir dire questions, counsel shall also electronically mail to the Court in digital format and compatible with Microsoft Word or WordPerfect, the proposed jury instructions and verdict form(s). **These documents should be sent to mceorders@caed.uscourts.gov.**

    XI.   <u>AUDIO/VISUAL EQUIPMENT</u>

    The parties are required to **file electronically** a joint request to the Courtroom Deputy Clerk, Stephanie Deutsch, by **April 12, 2010** if they wish to reserve and arrange for orientation with all parties on the Court's mobile audio/visual equipment for presentation of evidence. There will be one date and time for such orientation.

    XII. <u>SETTLEMENT CONFERENCE</u>

    A Settlement Conference is set before Judge Kendall J. Newman on **March 31, 2010, at 10:30 a.m**.

    Each party is directed to have a principal capable of disposition at the Settlement Conference or to be fully authorized to settle the matter on any terms at the Settlement Conference.

    Each party is directed to submit to the chambers of Judge Kendall J. Newman confidential settlement conference statements not later than **March 25, 2010.**

///

///

Such statements are neither to be filed with the clerk nor served on opposing counsel. However, each party shall notify the other party that the statement has been submitted to the judge's chambers.

XIII. DATE AND LENGTH OF TRIAL

A trial is scheduled for **May 3, 2010**. The estimated length of trial is **eleven (11) days**. The trial will consist of **eight (8) jurors**. Counsel are to email Stephanie Deutsch, Courtroom Deputy Clerk, at mceorders@caed.uscourts.gov, or call at (916) 930-4207, by **April 19, 2010** to ascertain the status of the trial date.

XIV. OBJECTIONS TO PRETRIAL ORDER

Each party is granted five (5) court days from the date of this Final Pretrial Order to object to any part of the order or to request augmentation to it. A Final Pretrial Order will be modified only upon a showing of manifest injustice. If no objection or modifications are made, this Order will become final without further order of the Court and shall control the subsequent course of the action, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: March 25, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE